**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | **CASE NUMBER 1:12-CR-119-10** |
| **v.** | § | |
| | § | |
| | § | |
| | § | |
| **MIKELL ALLEN CUNNINGHAM** | § | |

**REPORT AND RECOMMENDATION ON PETITION FOR WARRANT**
**FOR OFFENDER UNDER SUPERVISION**

Pending is a "Petition for Warrant or Summons for Offender Under Supervision" filed February 6, 2019, alleging that the Defendant, Mikell Allen Cunningham, violated his conditions of supervised release. This matter is referred to the undersigned United States magistrate judge for review, hearing, and submission of a report with recommended findings of fact and conclusions of law. *See United States v. Rodriguez*, 23 F.3d 919, 920 n.1 (5th Cir. 1994); *see also* 18 U.S.C. § 3401(i) (2000); E.D. Tex. Crim. R. CR-59.

## I. The Original Conviction and Sentence

Cunningham was sentenced on March 4, 2014, before The Honorable Marcia A. Crone, of the Eastern District of Texas, after pleading guilty to the offense of Conspiracy to Possess with Intent to Distribute 50 grams or more but less than 500 grams of a mixture containing Methamphetamine, a Class B felony. This offense carried a statutory maximum imprisonment term of 40 years. The guideline imprisonment range, based on a total offense level of 15 and a criminal history category of III, was 60 months. Cunningham was subsequently sentenced to 60 months' imprisonment followed by a 4 year term of supervised release subject to the standard conditions of release, plus special conditions to include financial disclosure, drug aftercare,

prohibition from associating, carrying-on, or participating in any form of gang-related or racketeering activity during his term of supervised release, and a $100 special assessment. Cunningham was released from the Federal Bureau of Prisons to a halfway-house in Beaumont, Texas, on January 20, 2016.  On May 17, 2016, he was released from the halfway house to home confinement.

## II.  The Period of Supervision

On July 13, 2016, Cunningham completed his period of imprisonment and began service of the supervision term.

## III.  The Petition

United States Probation filed the Petition for Warrant for Offender Under Supervision raising four allegations.  The petition alleges that Cunningham violated the following conditions of release:

> Allegation 1. The Defendant shall refrain from any unlawful use of a controlled substance.  Defendant shall submit to one drug test within 15 days of release from imprisonment or placement on probation and at least two periodic drug tests thereafter, as directed by the probation officer.
>
> Allegation 2. The Defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.
>
> Allegation 3. The Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.
>
> Allegation 4. During the term of release, the Defendant is prohibited from associating or in any manner communicating with any gang member and shall not promote, carry on, or participate in any form of gang-related or racketeering activity, as that term is defined in 18 U.S.C. § 1961.

## IV.  Proceedings and Evidence

The undersigned convened a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure to hear evidence and arguments on whether the Defendant violated conditions of

supervised release, and the appropriate course of action for any such violations. This hearing commenced on April 9, 2019, and was reconvened and completed on May 9, 2019. At the hearing, Cunningham pled true to the first allegation that he possessed a controlled substance (but not that he used one), true to the second allegation that he shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer, not true to the third allegation that he shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer, and true to the fourth allegation that claimed he associated or communicated with a gang member and promoted, carried on, or participated in any form of gang-related or racketeering activity.

At the hearing, the Government called Jerry McFarland, probation officer for the Eastern District of Texas, Beaumont, Texas, to testify. Officer McFarland testified that Cunningham started his supervised release in July 2016, although he was supervised in a pre-release manner prior to his release. In April 2017, Orange County Sheriff's Department officers observed Cunningham frequenting a known Aryan Brotherhood "compound" in Vidor, Texas with other convicted felons and reported this behavior to Cunningham's probation officer. Officer McFarland testified that during this period, Cunningham appeared to be complying with the terms of his release and was trying to get custody of his daughter.

The Government also called Danny Morgan, probation officer for the Southern District of Texas, Houston Division, to testify. Cunningham was transferred to Officer Morgan's supervision in November 2017 because of his desire to reside in Crosby, Texas. In January 2018, Cunningham voluntarily agreed to be interviewed by FBI officers concerning a cold case homicide. At the time,

Cunningham did not report this interview to his probation officer.[1]  Officer Morgan also testified that Cunningham tested positive for methamphetamine in April 2018 and that he admitted to such use.  The Government introduced the urinalysis report and a signed admission by Cunningham.[2] (Ex. 1.)

The Government also called Joshua Lyons, an agent with the Federal Bureau of Investigation who is assigned to investigate the Aryan Brotherhood of Texas ("ABT"), to testify. Agent Lyons referred to a Power Point presentation during his testimony and explained the structure and identified ranking members of the ABT and Cunningham's role within the gang. (Ex. V.)

Agent Lyons testified that the ABT is comprised of five Generals in Texas who are responsible for a defined geographic area.  The Generals maintain control of the gang activity within their region.  Generals are at the top of the chain of command, followed by Majors and Captains—in that order.  Prior to his prison term, Cunningham held the rank of Captain under ABT Major, Joshua Bodine, and ABT General, Larry Bryan.   Around 2010, Cunningham was excommunicated from the ABT because his name appeared on an "X-list" that was confiscated from an ABT Lieutenant.

By 2018, Bodine had been named ABT General of Region 3 and Bryan was General of Region 1.[3]  The Government introduced evidence that Bodine was communicating with an unidentified individual indicating that Cunningham was interested in rejoining the ranks of the ABT.  (*Id.*) (Email from unidentified individual to Bodine: "I did run into Mikey Cunningham and he told me to give you his email address and he needs to talk to you about something he said he's

---

[1] FBI agents informed the U.S. Probation Officer of the interview on January 22, 2019.
[2] Cunningham indicated on the form that the reason for his amphetamine use was that he had been studying for a major test and taking exams and he took "maybe 3" Appidex pills.  (Ex. 1, p. 4.)
[3] Region 1 encompasses Southeast Texas, including Jefferson and Harris counties.

4

on federal parole and his parole officer is monitoring his stuff but I told him I'd send you his email…" Bodine responded: "I did put Mikey's email in and he already accepted.")

In an email dated February 11, 2018, Cunningham asked Bodine to be removed from the list of excommunicated members and rejoin as an active ABT member. ("I know u put me on that list ur the only one that can take me off.") (*Id.*) Bodine and Cunningham emailed throughout 2018 and discussed rank and leadership within the ABT. During this period, Cunningham was sending money to Bodine's commissary account (sometimes via a third party) and continued to email Bodine about his involvement in ABT gang activity.[4] An email between Region 1 General Bryan and an unidentified individual suggests that by January 2019, Cunningham attained the rank of Major of Region 1, which is second-in-command only to General. On February 12, 2019, Cunningham was arrested for violation of his terms of supervised release and consented to a search of his cell phone. Evidence seized from his cell phone show pictures of Cunningham and a confirmed ABT Captain of Region 1, and communication and photos relating to his apparent involvement in the sale of a semi-automatic pistol.[5] There are also text messages from Cunningham to a confirmed ABT member discussing his need for a Whizanator, which is a device worn and used to provide synthetic urine to bypass urinalysis, in an effort to thwart drug testing by his probation officer.

---

[4] An email exchange between Cunningham and Bodine suggested that Cunningham "got," or assaulted, another ABT member and that he "can only see out of one eye LOL." Instant messages recovered from Cunningham's phone also show messages between him and another ABT member that he "smashed on" another member because there was an order put on him.

[5] Cunningham is prohibited from possessing and/or selling firearms.

## V.  Sentencing Guidelines

According to Title 18 U.S.C. § 3583(e)(3), the court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than five years in prison if the offense that resulted in the term of supervised release is a Class A felony, more than three years if such offense is a Class B felony, more than two years in prison if such offense is a Class C or D felony, or more than one year in any other case.   The original offense of conviction was a Class B felony, therefore, the maximum imprisonment sentence is 3 years.

According to U.S.S.G. § 7B1.1(a)[1], if the court finds by a preponderance of the evidence that the Defendant violated conditions of supervision by possessing amphetamine, he will be in violation of Texas Health and Safety Code § 481.116 and will be guilty of committing a Grade B violation.  U.S.S.G. § 7B1.4(a) indicates that the applicable revocation imprisonment range, based on a Grade B violation and a criminal history of III, is 8 to 14 months.

According to U.S.S.G. § 7B1.1(a), if the Court finds by a preponderance of the evidence that Cunningham violated conditions of supervision by associating with persons engaged in criminal activity, and/or associating with persons convicted of a felony unless granted permission

---

1.  All of the policy statements in Chapter 7 that govern sentences imposed upon revocation of supervised release are non-binding.  *See* U.S.S.G. Ch. 7 Pt. A; *United States v. Price*, 519 F. App'x 560, 562 (11th Cir. 2013).

to do so by the probation officer, and/or not notifying the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer; and/or during the term of supervised release, associating or communicating with gang members and promoting, carrying-on, or participating in any form of gang-related or racketeering activity, Cunningham will be guilty of committing a Grade C violation. U.S.S.G. § 7B1.3(a)(2) indicates upon a finding of a Grade C violation and a criminal history category of III, the guideline imprisonment range is 5 to 11 months.

U.S.S.G. § 7B1.1(b) indicates where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade, which in Cunningham's case is a Grade B violation. According to U.S.S.G. § 7B1.3(c)(2), where the minimum term of imprisonment determined under U.S.S.G. § 7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in U.S.S.G. § 5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment.

According to 18 U.S.C. § 3583(h), when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. The authorized term of supervised release for this offense is not more than Life.

U.S.S.G. § 7B1.3(g)(2) indicates where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

### VI. Allegations

<u>Allegation 1.</u>

Cunningham pled true to the *use* of a controlled substance, but not true that he *possessed* amphetamines. If the evidence establishes that a positive result from a drug test is at a level such that passive inhalation or similar phenomenon may not reasonably account for it, then the district court may find that the defendant knowingly and voluntarily had, alone or jointly with others, actual physical control over the drug, or the power and intent to exercise dominion or control over it, and was hence in possession of it. *United States v. Courtney*, 979 F.2d 45, 49 (5th Cir. 1992) ("[O]nce the court finds a substance has been voluntarily and knowingly ingested, then, . . . it necessarily follows that the defendant has possessed the substance."); *United States v. Allen*, No. 1:07-CR-137, 2013 WL 1499514, at *2 (E.D. Tex. Mar. 11, 2013), report and recommendation adopted, No. 1:07-CR-137, 2013 WL 1499509 (E.D. Tex. Apr. 10, 2013) (holding that a positive urine specimen and admission to drug use constitutes possession in supervised release revocation proceedings).

In this case, the Government introduced evidence regarding the positive urinalysis report *and* a written admission signed by Cunningham that he ingested the controlled substance willingly

to better prepare for tests. The undersigned finds that the Government established by a preponderance of the evidence that Cunningham was in possession of a controlled substance, in violation of a mandatory term of supervised release, as claimed in Allegation 1.

Allegation 2.

Cunningham pled true to the second allegation, which claims he had ongoing communication with known felons incarcerated in various prison facilities, and known felons not incarcerated. The evidence submitted during the hearing also supports this allegation. Accordingly, the undersigned finds that Cunningham violated the second allegation.

Allegation 3.

Cunningham pled not true to the third allegation, which claims that he was interviewed by FBI agents regarding a cold case homicide, but did not notify his probation officer within seventy-two hours as required. U.S. Probation Officer Morgan testified that prior to his supervision of Cunningham, Cunningham had sent an email to Probation indicating he needed to report that the FBI wanted to speak with him. Officer Morgan was unaware whether anyone followed up with Cunningham, but that Cunningham never reported the FBI interview to him personally. Officer Morgan testified that it wasn't until January 2019 that he knew Cunningham had contact with the FBI concerning a cold-case homicide. The undersigned finds by a preponderance of the evidence that Cunningham violated a standard condition of his supervised release by not reporting his FBI interview to his probation officer within seventy-two hours, as claimed in the third allegation.

Allegation 4.

Cunningham pled true to the fourth allegation, which claims that he had communication with known gang members of the ABT, some of whom who were incarcerated, and promoted and/or carried on gang-related activities related to the ABT. Based upon his plea of "true" to this

allegation, and the evidence submitted in support of this allegation, the undersigned finds that the Defendant violated the fourth allegation of the Petition, as alleged.

The first allegation—that Cunningham possessed a controlled substance—has the most serious grade, and therefore determines Cunningham's guideline range for his penalty.  U.S.S.G. § 7B1.1(b).  U.S.S.G. § 7B1.1(a) suggests that the applicable revocation imprisonment range, based on a Grade B violation (possession of a controlled substance) and a criminal history of III, is 8 to 14 months.

## V. Sentencing Recommendation

In determining the Defendant's sentence, the court shall consider:

1. The nature and circumstance of the offense and the history and characteristics of the defendant; *see* 18 U.S.C. § 3553(a)(1);

2. The need for the sentence imposed: to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the Defendant with needed educational or vocational training, medical care, other corrective treatment in the most effective manner; *see* 18 U.S.C. §§ 3553 (a)(2)(B)-(D);

3. Applicable guidelines and policy statements issued by the Sentencing Commission, for the appropriate application of the provisions when modifying or revoking supervised release pursuant to 28 U.S.C. § 994(a)(3), that are in effect on the date the  defendant is sentenced; *see* 18 U.S.C. 3553(a)(4); *see also* 28 U.S.C. § 924(A)(3);

4. Any pertinent policy statement issued by the Sentencing Commission, pursuant to 28 U.S.C. § 994(a)(2), that is in effect on the date the defendant is sentenced; *see* 18 U.S.C. § 3553(a)(5); and

5. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; *see* 18 U.S.C. § 3553(a)(6).

6. The need to provide restitution to any victims of the offense.

18 U.S.C. §§ 3583(e) and 3553(a).  In balancing these factors, the undersigned makes two important findings relating to the nature and circumstance of the offense and the Defendant's characteristics.  First, Cunningham's initial offense was a drug-related felony and he is again found

to have been involved with controlled substance during his supervision period.  Second, when sentencing him for his initial offense, Judge Crone took special care to impose standard and special conditions limiting Cunningham's association and communication with known ABT gang members.  It is clear that Judge Crone imposed this condition to minimize the potential for recidivism into the ABT gang and its dangerous criminal enterprise.  Unfortunately, Cunningham ignored Judge Crone's conditions and actively sought means by which to further his involvement and membership with the ABT.  Despite being excommunicated, Cunningham *actively sought* a leadership role within the ABT, communicated with and financially supported ABT gang members, and perhaps committed an assault related to his ABT membership—all in violation of his terms of supervised release.  The nature and circumstance of the offenses demonstrate Cunningham's disrespect for the law, the ineffectiveness of prohibitive and deterrence mechanisms, and the increasing seriousness of the offenses and potential harm to the victims.

Cunningham's most severe violation is a Grade B violation, and the criminal history category is III.  The policy statement range in the Guidelines Manual is 8 to 14 months.  The Defendant did not comply with the conditions of supervision and has demonstrated an unwillingness to adhere to conditions of supervision.  Consequently, incarceration appropriately addresses the Defendant's violation. The sentencing objectives of punishment, deterrence and rehabilitation along with the aforementioned statutory sentencing factors will best be served by a prison sentence of 14 months, with a four year term of supervised release to follow.

## VII.  Recommendations

The court should find that the Defendant violated all four allegations contained in the petition.  The petition should be granted and the Defendant's supervised release should be revoked

pursuant to 18 U.S.C. § 3583. The Defendant should be sentenced to a term of 14 months' imprisonment with a four year term of supervised release to follow.

In addition to the mandatory and standard conditions of supervised release, the same special conditions previously imposed by Judge Crone shall be imposed, including: financial disclosure and drug aftercare, and complete prohibition from associating in or in any manner communicating with any gang member and shall not promote, carry on, or participate in any form of gang-related or racketeering activity. Cunningham's new four-year term of supervised release shall be supervised only by the U.S. Probation Office of the Eastern District of Texas. The evidence submitted at the hearing shows that Cunningham began violating his supervised release conditions only after his transfer from the Eastern District. Therefore, the undersigned finds supervision only in the Eastern District of Texas will further the statutory factors favoring rehabilitation of the Defendant.

## VIII.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report, and (4) no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2); Local Rule CV-72(c). A party who objects to this report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States District

Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 22nd day of May, 2019.

Zack Hawthorn
United States Magistrate Judge